UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERIN FITCHETT,

                                        Plaintiff,

                    -v-

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT ("NYPD"), CHIEF OF
INTELLIGENCE BUREAU THOMAS GALATI,
NYPD COMMANDING OFFICER HOWARD
REDMOND, NYPD LIEUTENANT KARL PFEFFER,
and NYPD SERGEANT PAUL BRISCOE,

                                        Defendants.

---

18 Civ. 8144 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Erin Fitchett ("Fitchett"), a Detective Third Grade in the New York City Police

Department ("NYPD"), brings race-based failure to promote, disparate treatment, and

discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), *as amended*

42 U.S.C. § 2000e *et seq.*, New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law

§ 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code

§ 8-101 *et seq.*, against the City of New York (the "City") and individual defendants Thomas

Galati, Chief of the NYPD Intelligence Bureau ("Galati"); Howard Redmond, a NYPD

Commanding Officer ("Inspector Redmond"); and Paul Briscoe, an NYPD Sergeant ("Sgt.

Briscoe").

Certain claims were dismissed on the pleadings. Following discovery, defendants now

move for summary judgment on Fitchett's remaining claims: for disparate treatment under Title

VII, and for disparate treatment, failure to promote, and unlawful discrimination under the

NYSHRL and NYCHRL. For the reasons that follow, the Court grants defendants' motion.

# I.     Background

## A.     Factual Background[1]

### 1.     NYPD Background

#### a.     Ranks and Promotions

Police officers in the NYPD perform patrol duties.  JSF ¶ 1.  Detectives are officers who perform investigative duties.  *Id.* ¶ 2.  There are three "grades" of detective: Detective Third Grade, Detective Second Grade, and Detective First Grade.  *Id.* ¶ 3.  If an officer performs 18 months of investigative work, as determined by the NYPD, that officer receives a "non-discretionary promotion to Detective Third Grade."  *Id.* ¶ 4.  Promotions to Detective Second Grade and Detective First Grade, however, are discretionary.  *Id.* ¶ 5.  Discretionary promotions do not require the officer to take an exam.  *See* Def. 56.1 ¶ 4; Pl. 56.1 ¶ 4.  Rather, if the officer meets certain qualifications, a supervisor can recommend the officer for the promotion.  *See* Def. 56.1 ¶ 4; Pl. 56.1 ¶ 4.  In the Intelligence Bureau, detectives must serve three years in their current position before they are eligible for a discretionary promotion.  *See* Def. 56.1 ¶ 5; Pl. 56.1

---

[1] This factual account draws from the parties' submissions on defendants' motion for summary judgment, including the Joint Statement of Undisputed facts, Dkt. 62 ("JSF"), defendants' Rule 56.1 statement, Dkt. 72 ("Def. 56.1"), plaintiff's Rule 56.1 response statement, Dkt. 87 ("Pl. 56.1"), and the declarations (with accompanying exhibits) of Dominique F. Saint-Fort, Dkt. 74 ("Saint-Fort Decl."), Thomas Galati, Dkt. 75 ("Galati Decl."), Marshall B. Bellovin, Dkt. 89 ("Bellovin Decl."), and Erin Fitchett, Dkt. 89-4 ("Fitchett Decl.").

Citations to a party's Rule 56.1 statement incorporate by reference the documents cited therein. Where facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary evidence, and are denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts true.  *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[ ] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

¶ 5; *see also* Galati Decl. ¶¶ 6–7.  The next level ranks are supervisory positions, *e.g.*, Sergeant, Lieutenant, Captain.  Promotions to these positions require the officer to take and pass an exam, JSF ¶¶ 6–7.  Promotions are announced to the entire NYPD through a FINEST message.  *Id.* ¶ 8.

> b.     *The Intelligence Bureau*

The NYPD Intelligence Bureau, which has approximately 1,000 personnel, comprises four sections: the Public Security Section ("PSS"), the Intelligence and Analysis Section, the Criminal Intelligence Section, and the Municipal Security Section ("MSS").  JSF ¶¶ 9–10.  Since 2006, Chief Thomas Galati ("Chief Galati") has overseen the uniformed aspect of the Intelligence Bureau.  *Id.* ¶ 11.

MSS contains two units: the Executive Protection Unit ("EPU") and the Uniformed Operations Unit ("UOU").  *Id.* ¶ 12.  Since 2014, Inspector Howard Redmond ("Inspector Redmond") has been the Commanding Officer of MSS.  *Id.* ¶ 13.  Inspector Redmond reports directly to Chief Galati.  *Id.* ¶ 14.  MSS, and specifically EPU, is in charge of security for City Hall and Gracie Mansion and security for the Mayor and his family.  *See id.* ¶¶ 15–16.

Promotions within the EPU occur at the recommendation of the unit's commanding officer, at the request of the individual being protected, or at the request of other high-ranking individuals.  *Id.* ¶ 17.  The final decision is made by the Police Commissioner.  *Id.* ¶ 18.[2]  As Commanding Officer of the MSS, Inspector Redmond has made recommendations for promotions in the EPU, some of which were approved and others of which were rejected. *Id.* ¶ 19.  The parties dispute the extent to which Chief Galati plays a role in promotions. Defendants contend that he does not review recommendations for promotions or decide

---

[2] Fitchett appears to dispute this statement in his 56.1 response.  *See* Pl. 56.1 ¶ 3 (describing role Redmond plays in determining enhanced roles in the EPU and desirable positions).  However, the parties stipulated in the JSF that the Police Commissioner is the final decisionmaker on promotions in the NYPD.  *See* JSF ¶ 18.

promotions.  *See* Galati Decl. ¶ 9.  Fitchett counters that as Commanding Officer of the

Intelligence Bureau, Chief Galati, through his recommendations, is influential, as are unit

Commanding Officers, in determining who in the EPU gets promoted.  *See* Bellovin Decl., Ex. 3

("Redmond Dep.") at 21–22 (Redmond assigns who drives the Mayor), 65, 69 (Redmond has

made promotion recommendations for other officers).[3]  Fitchett testified that he believed Chief

Galati was the decision-maker for promotions in the Intelligence Bureau.  *See id.*, Ex. 2

("Fitchett Dep.") at 55.

## 2. **Fitchett's Employment History with the NYPD**

Fitchett, who identifies as Black, joined the NYPD as a police officer on July 11, 2005.

JSF ¶¶ 20–21.  Between January 2, 2006 and September 1, 2008, Fitchett was assigned to the

75th Precinct.  *Id.* ¶ 22.  On September 2, 2008, Fitchett was transferred to the 67th Precinct.

*Id.* ¶ 23.  On January 10, 2013, Fitchett was transferred to the MSS and assigned to the UOU.

*Id.* ¶ 24.  On June 26, 2014, Inspector Redmond transferred Fitchett from the UOU to the EPU,

at which point Fitchett was placed on the "investigative track."  *Id.* ¶ 25.  On September 30,

2016, Fitchett was promoted to Detective Third Grade.  *Id.* ¶ 26.

### a. *Fitchett's October 2016 Grievance*

On October 11, 2016, after his promotion to Detective Third Grade, Fitchett filed a

grievance claiming that despite completing 18 months of investigative work as of December 25,

2015, he had not been promoted to that post until September 30, 2016, nearly nine months after

becoming eligible.  *Id.* ¶ 27.  Fitchett could have filed this grievance earlier but did not do so.

---

[3] Redmond's deposition has been filed under seal because it contains information that is law-enforcement sensitive and implicates the personal privacy interests of third parties.  *See* Dkt. 78 (order granting defendants' motion to seal deposition).  Redacted excerpts of Redmond's deposition are available at Exhibit A of the Saint-Fort Declaration.

Def. 56.1 ¶ 12; Pl. 56.1 ¶ 12.  In his grievance, Fitchett did not claim that the delay in his promotion was due to his race.  *See* Saint-Fort Decl., Ex. B ("Fitchett Grievance"); Def. 56.1 ¶ 7; Pl. 56.1 ¶ 7.

On January 19, 2017, Fitchett's grievance was granted.  JSF ¶ 28.  His promotion was backdated to December 25, 2015, such that he received retroactive credit as a Detective Third Grade between December 25, 2015, and September 30, 2016.  *Id.* ¶¶ 28–29.  Fitchett also received retroactive pay for the period between December 25, 2015, and September 30, 2016.  *See* Def. 56.1 ¶ 17; Pl. 56.1 ¶ 17.

Fitchett believes that the delay in his promotion could have been because of race.  *See* Pl. 56.1 ¶ 15; Fitchett Dep. at 39–40.  Fitchett testified that although he was "not exactly sure why" his promotion did not occur earlier, he did not "know any other reason, because everybody else got promoted on time."  Fitchett Dep. at 40.  Fitchett testified that no one in the EPU ever made any race-based comments to him, *see id.* at 60, but that he has been the subject of critical comments, *see id.* at 45, 68.  For example, on January 16, 2018, Inspector Redmond sent a message to the EPU email group mocking him for failing that day to drive the lead car sufficiently far ahead of the mayoral motorcade.  The message read: "Fitchett, as the 5 minute Auto – hope he can handle it."  *Id.* at 45–46.  Fitchett contends that once Inspector Redmond realized that Fitchett was on the email chain, he sent a follow-up email:  "Just joking, Erin, stay in [front] of the motorcade."  *Id.* at 45.  Fitchett also testified that, on the same day, detective Nancy Sosa called him "stupid" in an email to Inspector Redmond.  *Id.* at 69 ("LOL, seriously, you can't fix stupid, LOL, high not.").  Although the email did not name him, it was part of a thread that appeared to be referencing that same lapse.  *See id.* at 69–70.

Defendants contend that, in practice, promotions to Detective Third Grade, although not discretionary, do not automatically occur after 18 months of investigative work.  *See* Galati Decl. ¶ 17; Redmond Dep. at 88.  Grievances about delays, like Fitchett's, they attest, are common in the NYPD, as there is often a lag between the date of eligibility and the actual promotion.  Galati Decl. ¶ 17.  Other officers have experienced lags.  *See* Redmond Dep. at 14–15.  Inspector Redmond, a white male, experienced a lag of approximately four months.  *See id.* at 15, 93–94. Inspector Redmond did not, however have to file a grievance to receive his promotion after a four-month delay.  *See id.* at 93–94.  The promotion of Jermaine Whidbee ("Whidbee"), a Black male, to Detective Third Grade was also delayed.  Fitchett Dep. at 40–41.  Whidbee was promoted to Detective Third Grade on February 14, 2018.  *See* Def. 56.1 ¶ 28; Pl. 56.1 ¶ 28; Redmond Dep. at 71–72; Galati Decl. ¶ 13(k).  The record does not reflect the length of Whidbee's delay.  Fitchett's grievance was approved at the same time as that of another officer, Vivian Planta-Martin ("Planta-Martin").  *See* Saint-Fort Decl., Ex. D (approving Fitchett and Planta-Martin grievances).  Planta-Martin, a Hispanic officer, also filed a grievance alleging that her promotion to Detective Third Grade had been delayed, *see* Def. 56.1 ¶¶ 13–14; Pl. 56.1 ¶¶ 13–14, although Planta-Martin's delay was "[n]ot as long" as Fitchett's, Fitchett Dep. at 40. The record does not reflect the length of her delay.  Finally, Fitchett identifies three non-African American officers in the EPU who did not experience a delay: Brian Robe, Dave Breyfogle, and Sean Rooney, who were "all promoted within the regular 18-month period."  Fitchett Decl. ¶ 8. The record does not reflect when these officers began performing investigative work or when they were promoted.

Fitchett did not complain of race discrimination in the EPU's promotion policies to Chief Galati, *see* Def. 56.1 ¶ 31; Pl. 56.1 ¶ 31.  He did complain to Inspector Redmond about Sgt.

Briscoe's allegedly discriminatory assignments but did not complain about any alleged disparate promotion policies.  *See* Def. 56.1 ¶ 30; Pl. 56.1 ¶ 30.  Fitchett also did not complain about race discrimination to the NYPD's Office of Equal Opportunity Employment.  *See* Fitchett Dep. at 28.  Rather, on March 27, 2018, Fitchett filed a complaint directly with the Equal Employment Opportunity Commission ("EEOC").  *See id.* at 28–29; *see also* Saint-Fort Decl., Ex. Y ("EEOC Compl.") (Fitchett's Charge of Discrimination filed with the EEOC).  On July 27, 2018, Fitchett was issued a Right to Sue notice.  *See* Saint-Fort Decl., Ex. Z (Fitchett's EEOC Dismissal and Notice of Rights).

> b.    *Events Occurring After Fitchett Brought This Action*

Fitchett initiated this lawsuit on September 6, 2018.  On December 20, 2018, he was transferred to the Dignitary Protection Unit ("DPU").  JSF ¶ 30.  The DPU is not in MSS; it is a unit of PSS.  Fitchett was assigned to Congressman Jerrold Nadler's detail.  *See* Def. 56.1 ¶ 19; Pl. 56.1 ¶ 19.  Although he was involuntarily transferred out of the EPU, he was given the option to transfer to any unit in the Intelligence Bureau, but Deputy John Miller recommended Fitchett for the Nadler detail because it had the same hours as the EPU.  Def. 56.1 ¶ 20; Pl. 56.1 ¶ 20.  Fitchett's schedule and salary remained the same after the transfer.  Def. 56.1 ¶ 21; Pl. 56.1 ¶ 21.  Fitchett's seniority improved as a result of his transfer to the Nadler detail because the team was smaller than the EPU.  *See* Fitchett Dep. at 91.

Fitchett became eligible for promotion to Detective Second Grade on December 25, 2018.  *See* Def. 56.1 ¶ 27; Pl. 56.1 ¶ 27.  Fitchett has not since been promoted to that post, despite, he states, less qualified non-African American detectives having been promoted.  *See* Fitchett Decl. ¶¶ 15, 19.  Fitchett believes that racial discrimination accounts for his not having been promoted to Detective Second Grade while in the EPU, *see* Def. 56.1 ¶ 25; Pl. 56.1 ¶ 25; *see also* Fitchett Dep. at 49, although he concedes that he was five days shy of eligibility for that promotion as of

the day he was transferred from the EPU to the DPU, *see* Def. 56.1 ¶ 27; Pl. 56.1 ¶ 27.  Fitchett

never spoke to Chief Galati or Inspector Redmond about such a promotion.  *See* Def. 56.1 ¶ 26;

Pl. 56.1 ¶ 26; *see also* Fitchett Dep. at 55.

      **3.**      **Promotions of African-American and Black Officers in the EPU**

Because Fitchett's claims include ones of disparate treatment, the Court chronicles here

the data—to the extent such has been made part of the record—bearing on this claim.

Between January 1, 2014, and December 20, 2018, there have been 96 members of the

EPU: 49 who identify as white, 26 who identify as Black, 20 who identify as Hispanic, and one

who identifies as Asian.  *See* Def. 56.1 ¶ 23; Pl. 56.1 ¶ 23; *see also* Galati Decl. ¶¶ 11–12.

During this period, promotions in the EPU were made on the following dates:

- January 29, 2014, *see* Saint-Fort Decl., Ex. E;

- June 23, 2014, *see* Saint-Fort Decl., Ex. F;

- January 27, 2015, *see* Saint-Fort Decl., Ex. G;

- April 22, 2015, *see* Saint-Fort Decl., Ex. H;

- June 24, 2015, *see* Saint-Fort Decl., Ex. I;

- August 21, 2015, *see* Saint-Fort Decl., Ex. J;

- October 27, 2015, *see* Saint-Fort Decl., Ex. K;

- November 20, 2015, *see* Saint-Fort Decl., Ex. L;

- August 24, 2016, *see* Saint-Fort Decl., Ex. M;

- September 27, 2016, *see* Saint-Fort Decl., Ex. N;

- October 26, 2016, *see* Saint-Fort Decl., Ex. O;

- November 17, 2016, *see* Saint-Fort Decl., Ex. P;

- December 16, 2016, *see* Saint-Fort Decl., Ex. Q;

- January 25, 2017, *see* Saint-Fort Decl., Ex. R;

- December 20, 2017, *see* Saint-Fort Decl., Ex. S;

- June 1, 2018, *see* Saint-Fort Decl., Ex. T;

- July 25, 2018, *see* Saint-Fort Decl., Ex. U;

- August 29, 2018, *see* Saint-Fort Decl., Ex. V;

- November 16, 2018, *see* Saint-Fort Decl., Ex. W; and

- December 19, 2018, *see* Saint-Fort Decl., Ex. X.

Between January 1, 2014 and December 20, 2018, thirteen[4] Black EPU officers, including Fitchett, were promoted to one of the detective ranks. *See* Galati Decl. ¶ 13. Seven Black EPU members were promoted to Detective Third Grade:

- Robert Carter on August 21, 2015;

- Ashley Ashton on August 21, 2015;

- Jamel Ashley on August 21, 2015;

- Teron Figueroa on August 21, 2015;

- Senice Black[5] on October 27, 2015;

---

[4] In their 56.1 statement, defendants state that 12 Black officers in the EPU were promoted in this period. *See* Def. 56.1 ¶ 28. However, the April 22, 2015 FINEST message states that Gilbert Pierre Louis, who is not included in defendants' 56.1 statement, was also promoted to Detective Second Grade. *See* Saint-Fort Decl., Ex. H. Inspector Redmond testified that Pierre Louis is a Black male. *See* Redmond Dep. at 67. Accordingly, Pierre Louis is included below on the list of Black officers promoted to Detective Second Grade in the EPU. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) (in determining whether an unopposed fact in a party's Rule 56.1 statement is supported by the record, "the court may rely on other evidence in the record even if uncited").

[5] In their 56.1 statement, defendants list Senice Black as having been promoted to Detective Second Grade. *See* Def. 56.1 ¶ 28. However, Inspector Redmond testified that, as of October 11, 2019, Senice Black was listed as a Detective Third Grade. *See* Redmond Dep. at 55. And the October 27, 2015 FINEST message announcing promotions in the EPU lists Black as having

- Erin Fitchett on September 30, 2016; and

- Jermaine Whidbee on February 14, 2018.

*See* Saint-Fort Decl., Exs. J, K, N; Galati Decl. ¶ 13(k).  In the same period, per FINEST messages, eight non-Black officers (or officers whose race the record leaves unspecified) in the EPU were promoted to Detective Third Grade.[6]

Between January 1, 2014 and December 20, 2018, four Black detectives in the EPU were promoted to Detective Second Grade:

- Tanasha Dalton on January 27, 2015;

- Gilbert Pierre Louis on April 22, 2015;

- Eustace Hunte on January 28, 2016;[7] and

- Tiffany Wright on August 24, 2016.

---

been promoted to "Detective Inspector" (Detective Third Grade), not Detective Second Grade. *See* Saint-Fort Decl., Ex. K.  She is not listed on any later FINEST messages in the record.

[6] The parties do not cite the comparative number of non-Black promotions.  However, the Court provides them here, based on uncited materials in the record, to provide context for the number of Black promotes cited by the parties.  These were Edward Klein (white male), *see* Saint-Fort Decl., Ex. E; Redmond Dep. at 65; David Breyfogle (white male), *see* Saint-Fort Decl., Ex. J; Redmond Dep. at 56; Kelly Briant (white or Hispanic female), *see* Saint-Fort Decl., Ex. J; Redmond Dep. at 57; Christophe Fowler (white male), *see* Saint-Fort Decl., Ex. J; Redmond Dep. at 63; Brian Roby (white male), *see* Saint-Fort Decl., Ex. J; Redmond Dep. at 68; Edgar Robles (unknown), *see* Saint-Fort Decl., Ex. K; Robert Fitzgerald (white male), *see* Saint-Fort Decl., Ex. M; Redmond Dep. at 62; and Fabian Rojas (Hispanic male), *see* Saint-Fort Decl., Ex. Q; Redmond Dep. at 68.

[7] The summary judgment record does not contain a FINEST message for January 28, 2016, nor does it show any other promotions occurring on this date.

*See* Saint-Fort Decl., Exs. G, H, M; Galati Decl. ¶ 13(g); Redmond Dep. at 67.  In the same period, per FINEST messages, nine non-Black officers (or officers of unspecified race) in the EPU were also promoted to Detective Second Grade.[8]

Between January 1, 2014, and December 20, 2018, two Black EPU detectives were promoted to Detective First Grade: Katrina Brownlee on December 20, 2017, and Andre Holmes on July 25, 2018.  *See* Saint-Fort Decl., Exs. S, U.  Daniel Rivera, whose race is unspecified, was promoted to Detective First Grade while in the EPU on October 26, 2016.  *See id.*, Ex. O.

Fitchett notes that, despite being eligible for a promotion to Detective Second Grade since either August 2018 or October 2018, Robert Carter, Ashley Ashton, Jamel Ashley, Teron Figueroa, and Senice Black have all remained at Detective Third Grade rank, or, in the case of Teron Figueroa, were not promoted in the unit and have since left.  *See* Redmond Dep. at 52–55, 58, 61–62.  However, he notes, between January 1, 2014, and October 11, 2019, the following officers—each of whom was either a Detective Third Grade or an officer when they joined the EPU—were promoted to Detective Second Grade: Donald Catanzaro (white male), Sean Rooney (white male), Karl Rugg (white male), Jorge Bravo (Hispanic male), Marissa Cabo (Hispanic female), Leo Pereyra (Hispanic male), Nelson Vergara (Hispanic male), and Salwa Merced-Jwayyed (Middle Eastern female).  *See* Redmond Dep. at 55–59, 66–69, 71.  The record does not reflect when these individuals joined the EPU or when they became Detective Third Grade.

---

[8] These were Renato Silvis (unknown), *see* Saint-Fort Decl., Ex. G; Leo Pereyra (Hispanic male), *see* Saint-Fort Decl., Ex. I; Redmond Dep. at 67; Donald Catanzaro (white male), *see* Saint-Fort Decl., Ex. J; Redmond Dep. at 59; Ivette Serrano (unknown), *see* Saint-Fort Decl., Ex. L; James Boyle (unknown), *see* Saint-Fort Decl., Ex. R; Nelson Vergara (Hispanic male), *see* Saint-Fort Decl., Ex. T; Redmond Dep. at 71; Karl Rugg (white male), *see* Saint-Fort Decl., Ex. V; Redmond Dep. at 69; Salwa Merced-Jwayyed (Middle Eastern female), *see* Saint-Fort Decl., Ex. W; Redmond Dep. at 66; and Sean Rooney (white male), *see* Saint-Fort Decl., Ex. X; Redmond Dep. at 68.

### B.     Procedural History

On September 6, 2018, Fitchett filed his initial complaint.  Dkt. 1.  On November 15, 2018, defendants timely moved to dismiss.  Dkt. 23.  On November 16, 2018, the court ordered Fitchett to either amend his complaint or oppose the motion to dismiss by December 6, 2018. Dkt. 27.  On December 6, 2018, Fitchett filed the first amended complaint ("FAC").  Dkt. 28. On December 19, 2018, defendants filed a motion to dismiss the FAC.  Dkt. 29.

On January 10, 2019, the Court held an initial conference and approved the parties' case management plan.  Dkt. 36.  On January 22, 2019, Fitchett timely filed an opposition to the motion to dismiss, and moved to supplement and amend the complaint.  Dkt. 38.  On January 28, 2019, defendants consented to Fitchett's filing a second amended complaint.  Dkt. 39.  On January 29, 2019, the Court granted Fitchett leave to do so.  Dkt. 40.

On February 8, 2019, Fitchett filed the second amended complaint.  Dkt. 41 ("SAC"). On March 5, 2019, defendants moved to dismiss.  Dkt. 42.  On March 18, 2019, Fitchett filed an opposition.  Dkt. 46.  On March 26, 2019, defendants filed their reply.  Dkt. 47.  On July 30, 2019, the Court granted in part and denied in part the motion to dismiss.  *Fitchett v. City of New York*, No. 18 Civ. 8144 (PAE), 2019 WL 3430726 (S.D.N.Y. July 30, 2019) ("*MTD Opinion*"). The Court dismissed with prejudice Fitchett's hostile work environment claims, his disparate treatment claims based his unfavorable work assignments and reduced meal breaks, and his claims against Karl Pfeffer for failure to plead Pfeffer's actual participation in discrimination. The Court also dismissed with prejudice all claims against the NYPD as a non-suable entity and all claims against individuals brought under Title VII.

On August 29, 2019, the remaining defendants answered.  Dkt. 55.  On March 2, 2020, after discovery, the Court held a pre-motion conference and set a briefing schedule for summary judgment.  Dkt. 61.  On March 16, 2020, the parties filed the JSF.  On May 4, 2020, defendants

filed their motion for summary judgement.  *See* Dkts. 71 (motion), 73 ("Def. Mem.").  On July

29, 2020, following extensions, Fitchett filed his opposition.  Dkt. 88 ("Pl. Opp'n").  On August

20, 2020, defendants filed a reply.  Dkt. 91 ("Def. Reply").

## II.    Legal Standards Governing Motions for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

The movant bears the burden of demonstrating the absence of a question of material fact.  In

making this determination, the Court must view all facts "in the light most favorable" to the non-

moving party.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

If the movant meets its burden, "the nonmoving party must come forward with

admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary

judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  "[A] party may

not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion

for summary judgment."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).

Rather, to survive a summary judgment motion, the opposing party must establish a genuine

issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A);

*see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing

law" will preclude a grant of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  In determining whether there are genuine issues of material fact, a court is "required

to resolve all ambiguities and draw all permissible factual inferences in favor of the party against

whom summary judgment is sought."  *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012)

(quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

In cases that involve claims of discrimination, courts must use "an extra measure of caution" in determining whether to grant summary judgment "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted).  However, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted) (alterations omitted).  Thus, even in the context of a discrimination case, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment," *Holcomb*, 521 F.3d at 137; *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010), and courts may grant summary judgment against "discrimination claims in cases lacking genuine issues of material fact," *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (citation omitted).

## III.   Discussion

Fitchett's surviving claims, after the *MTD Opinion*, arise from his delayed promotion to Detective Third Grade and/or his not having been promoted to Detective Second Grade.  These are: (1) Title VII disparate treatment claims, against the City; (2) NYSHRL and NYCHRL claims for disparate treatment, failure to promote, and unlawful discrimination, against all defendants (the City, Chief Galati, Inspector Redmond, and Sgt. Briscoe); and (3) disparate impact claims under Title VII (against the City) and the NYSHRL and the NYCHRL (against all defendants).[9]

---

[9] The SAC does not contain a separately titled disparate impact cause of action, but the Court, mindful of "the substance of alleged misconduct of which [Fitchett] complains rather than the terms used to describe it," *Canosa v. Ziff*, No. 18 Civ. 4115 (PAE), 2019 WL 498865, at *20 (S.D.N.Y. Jan. 28, 2019) (citing *Schiano*, 445 F.3d at 604), construes the SAC to make this claim, insofar as it alleges that, in violation of Title VII, the NYSHRL, and the NYCHRL,

At the threshold, the Court prunes the claims against Sgt. Briscoe.  As defendants note, the record is devoid of evidence that he played any role in the delay of Fitchett's promotion to Detective Third Grade or the NYPD's failure to promote him to Detective Second Grade.  The NYSHRL and NYCHRL permit individual liability for discrimination only if the individual qualifies as an "employer" or "aided and abetted the unlawful discriminatory acts of others." *Xiang v. Eagle Enters., LLC*, No. 19 Civ. 1752 (PAE), 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020).  Under both laws, the individual must have actually participated in the conduct that gave rise to the claims, and the NYCHRL provides "a broader basis for direct individual liability than" the NYSHRL, in that it permits liability regardless of the individual's decision-making power.  *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012). The record evidence cannot establish even the lighter of these burdens as to Sgt. Briscoe.  It establishes, at most, as summarized by Fitchett, that Sgt. Briscoe assigned him "debilitating" tasks, and cut his meal breaks short, thereby causing him to experience daily stress.  Pl. Opp'n at 3–4.  But these allegations, while germane to Fitchett's dismissed hostile work environment claims, are unconnected to Fitchett's surviving claims relating to his promotions.  The Court dismisses all claims against Sgt. Briscoe for lack of evidence of actual participation.

### A.    Statute of Limitations Under Title VII

To bring a claim under Title VII, a plaintiff must file a charge with the EEOC within 300 days of the alleged discriminatory conduct.[10]  *See* 42 U.S.C. § 2000e–5(e)(1); *Baroor v. N.Y.*

---

defendants "maintain[ed] a policy or practice that has a disparate impact on African-American detectives, namely a secretive process that lacks standards and allows the all-white supervisors to refuse to promote deserving African-American detectives," SAC ¶¶ 110, 153, 161.

[10] The statute of limitations for claims under the NYSHRL and NYCHRL is three years.  *See* N.Y. C.P.L.R. 214(2); N.Y.C. Admin. Code § 8-502(d).  Defendants do not argue that Fitchett's state or city claims are untimely.

*City Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010) (summary order). "This statutory requirement is analogous to a statute of limitations." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996). Title VII claims accrue when the plaintiff "knew or had reason to know of the injury serving as the basis for his claim." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999). However, "[w]hen a plaintiff experiences a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) (internal quotations and citation omitted).

"The policy need not be 'formal' or 'widespread,' but the employer must permit the conduct 'to continue unremedied for so long that its inaction may reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination.'" *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 301 (S.D.N.Y. 2009) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 362 (2d Cir. 2001)). In the absence of a continuous policy or practice, "the statute precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113.

Here, Fitchett filed his EEOC grievance on March 27, 2018, meaning that claims based on conduct on or after May 31, 2017, are timely. As noted, his Title VII claims against the City arise from his delayed promotion to Detective Third Grade and the NYPD's failure to promote him to Detective Second Grade. Promotions are usually considered discrete acts. *See id.* at 114. "Courts have consistently held that discrete or completed acts, including repeated failures to promote an employee, do not constitute a continuing violation." *Aggarwal v. N.Y. City Health & Hosp. Corp.*, No. 98 Civ. 5063 (DLC), 2000 WL 172787, at *4 (S.D.N.Y. Feb. 10, 2000).

However, courts in this Circuit have applied the continuing violation doctrine to failure-to-promote claims, including in the context of police departments, where the plaintiff alleges that the employer failed to promote an officer pursuant to an "ongoing discriminatory policy or practice, such as use of discriminatory seniority lists or employment tests." *Harris*, 186 F.3d at 248. However, although the "mere allegation of the existence of such a policy" may be sufficient on a motion to dismiss, it "may not survive a summary judgment motion." *Pustilnik v. Hynes*, No. 99 Civ. 4087 (JG), 2000 WL 914629, at *5 (E.D.N.Y. June 27, 2000) (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997)). On that theory, a claim backed by sufficient evidence of a continuing discriminatory policy or practice that extended through May 31, 2017, would be timely here.

As to Fitchett's delayed promotion to Detective Third Grade, there is no need to determine whether it constituted a continuing violation. That is because, even if so, Fitchett's Title VII claims as to it would still be untimely. On September 30, 2016, Fitchett was promoted to Detective Third Grade, and on October 11, 2016, filed his grievance. JSF ¶¶ 26–27. His grievance was granted on January 19, 2017, when he was given a retroactive promotion date of December 25, 2015 (the date he first became eligible for the promotion) and backpay. *Id.* ¶¶ 28–29; *see* Def. 56.1 ¶ 17; Pl. 56.1 ¶ 17. Therefore, "[e]ven if the Police Department engaged in a continuing violation by not promoting him to [Detective Third Grade], that violation ended when" Fitchett was given his retroactive promotion and backpay "because after that date the Department was no longer failing to promote him" to Detective Third Grade. *Harris*, 186 F.3d at 248 (possible continuing violation of failing to promote officer to sergeant ended when he civil service list expired). January 19, 2017 was nearly four and a half months before May 31, 2017.

In denying defendants' motion to dismiss on this point, the Court permitted Fitchett to test in discovery whether the NYPD engaged in discriminatory behavior towards Fitchett that continued through to May 31, 2017.  *See MTD Opinion*, 2019 WL 3430726, at *7 (noting possibility that NYPD engaged in a "seamless process . . . of ignoring him and shunting his candidacy" that continued until that date).  Discovery has not uncovered such evidence.  Fitchett notes evidence that, between 2016, when he transferred out of Sgt. Briscoe's unit, and 2018, he was regularly assigned support roles, *see* Redmond Dep. at 34–35, and received an unfavorable employment evaluation for the period between May 16, 2016, and May 15, 2017, by an officer who had never directly supervised Fitchett, *see* Bellovin Decl., Ex. 1; *see also* Fitchett Dep. at 33–35, 88–90.  But even assuming that these actions arose from racial discrimination, Fitchett does not explain how they related to the earlier delay in promoting him.  And "[d]iscrete incidents of discrimination that are unrelated to an identifiable policy or practice . . . 'will not ordinarily amount to a continuing violation,' unless such incidents are specifically related and are allowed to continue unremedied for 'so long as to amount to a discriminatory policy or practice.'"  *Lightfoot*, 110 F.3d at 907 (quoting *Van Zant*, 80 F.3d at 713).  A plaintiff cannot establish a "continuing violation . . . merely because the claimant continues to feel the effects of a time-barred discriminatory act."  *Harris*, 186 F.3d at 250.

Nor can Fitchett salvage his Title VII claims as to the delay in promoting him to Detective Third Grade by pointing to his claim that NYPD later discriminatorily failed to promote him to Detective Second Grade.  The promotions to the two posts are distinct events.  And Fitchett did not become eligible for a promotion to Detective Second Grade until December 25, 2018, over 18 months after May 31, 2017 and 23 months after January 19, 2017.  Accordingly, evidence of discriminatory treatment of Fitchett in connection with his non-

promotion to Detective Second Grade cannot salvage his claims based on the delayed promotion to Detective Third Grade.

Accordingly, Fitchett's Title VII claims related to the delay in his promotion to Detective Third Grade are untimely.

**B.      Discrimination, Disparate Treatment, and Failure to Promote Claims**

The Court considers next whether the evidence as to Fitchett's claims under Title VII, the NYSHRL, and the NYCHRL is sufficient to reach a jury.[11]

**1.      Legal Standards Governing Fitchett's Discrimination Claims**

*a.      Title VII and the NYSHRL*

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1).  The NYSHRL similarly makes it an "unlawful discriminatory practice" for an employer, based on an individual's "race, creed, [or] color . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment."  N.Y. Exec. Law § 296(1)(a).

Discrimination claims under both Title VII and the NYSHRL[12] are analyzed under the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *see also Summa v. Hofstra*

---

[11] Although the Court has held Fitchett's Title VII claims relating to his delayed promotion untimely, the ensuing analysis perforce addresses the sufficiency of the evidence on these claims, because Fitchett's claims under the NYSHRL are timely as to all promotions, and the substantive standards are the same under Title VII and the NYSHRL.

[12] In August 2019, the NYSHRL was amended to broaden its liability standards.  *See* N.Y. Exec. Law § 300.  The conduct alleged here, however, pre-dates the amendment, which does not have retroactive effect.  *See McHenry v. Fox News Network, LLC*, No. 19 Civ. 11294 (PAE), --- F. Supp. 3d ---, 2020 WL 7480622, at *8 (S.D.N.Y. Dec. 18, 2020).

*Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).  Under that framework, the plaintiff bears the initial

burden of establishing a *prima facie* case of discrimination.  *Holcomb*, 521 F.3d at 138.  To do

so, the plaintiff must show that (1) she "belonged to a protected class"; (2) she "was qualified for

the position [s]he held"; (3) she "suffered an adverse employment action"; and (4) "the adverse

employment action occurred under circumstances giving rise to an inference of discriminatory

intent."  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Holcomb*, 521

F.3d at 138).  The burden of establishing a *prima facie* case in an employment-discrimination

case is "minimal."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *see also Lenzi v.*

*Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019).

Where the plaintiff can demonstrate a *prima facie* case, "a presumption arises that more

likely than not the adverse conduct was based on the consideration of impermissible factors."

*Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (citing *Tex. Dep't of*

*Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–54 (1981)).  The burden of production then shifts to

the employer to "'articulate some legitimate, nondiscriminatory reason' for the disparate

treatment."  *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802); *see also Reeves v. Sanderson*

*Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (employer's burden is "one of production, not

persuasion").

If the employer satisfies that burden, the presumption of discriminatory intent "drops out

of the analysis," and "the plaintiff must establish, by a preponderance of the evidence, that the

employer's justification is a pretext for discrimination."  *Lenzi*, 944 F.3d at 108 (quotation and

citation omitted); *see also Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996).  The

plaintiff, however, is "not required to show that the employer's proffered reasons were false or

played no role in the employment decision, but only that they were not the only reasons and that

a prohibited factor was at least one of the 'motivating' factors" for the decision.  *Holcomb*, 521
F.3d at 138 (citation omitted); *see also* 42 U.S.C. § 2000e–2(m) (race, color, or sex must be "a
motivating factor" for employment decision).  However, "a plaintiff must provide more than
conclusory allegations of discrimination to defeat a motion for summary judgment."  *Schwapp v.
Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).  A plaintiff cannot defeat a summary judgment
motion by "offering purely conclusory allegations of discrimination, absent any concrete
particulars."  *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

       *b.*    *NYCHRL*

     The NYCHRL is construed "broadly in favor of discrimination plaintiffs, to the extent
that such a construction is reasonably possible," *Xiang*, 2020 WL 248941, at *6.  Claims under
the NYCHRL must be analyzed separately, because even if the challenged conduct is not
actionable under Title VII and the NSHRL, it may be "actionable under the broader New York
City standards."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir.
2013).  The discrimination inquiry under the NYCHRL is "simplified": "the plaintiff need only
show that her employer treated her less well, at least in part for a discriminatory reason."  *Id.*
at 110 n.8.  Then, "the employer may present evidence of its legitimate, non-discriminatory
motives to show the conduct was not caused by discrimination, but it is entitled to summary
judgment on this basis only if the record establishes as a matter of law that discrimination played
*no* role in its actions."  *Id.* (emphasis in original) (internal quotation marks and alterations
omitted); *see also Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 113–14 (1st Dep't 2012)
(noting applicability of *McDonnell Douglas* framework in analyzing discrimination claims under
NYCHRL).

### 2. Delayed Promotion to Detective Third Grade

#### a. *Title VII and NYSHRL Claims*

In addition to his untimely Title VII disparate treatment claim against the City, Fitchett brings claims for disparate treatment, failure to promote, and unlawful discrimination under the NYSHRL against all defendants in connection with his delayed promotion to Detective Third Grade. Each rests on the theory that the delay in promoting Fitchett was due to this race. The Court, like the parties, treats these claims as co-extensive.

For the purposes of this decision, the Court treats all remaining individual defendants as either Fitchett's "employers" or as having aided and abetted the asserted unlawful discriminatory acts of others towards him, as the NYSHRL requires. *Xiang*, 2020 WL 248941, at *5. To be sure, defendants contest that Chief Galati had the final say on, or played a role in reviewing recommendations for, promotions. *See* Def. 56.1 ¶¶ 1–2. But defendants do not move for summary judgment on the ground the individual defendants other than Sgt. Briscoe did not actually participate in the alleged discrimination.

#### i. *Prima Facie* Case

Defendants do not contest that Fitchett is a member of a protected class or that he was qualified for the Detective Third Grade position as of December 25, 2015. Instead, they argue that because Fitchett was given a retroactive promotion to December 25, 2015, and full backpay, he has not suffered an adverse employment action. *See* Def. Mem. at 11. They separately argue that even if Fitchett suffered an adverse employment action from the delay in promoting him, the evidence would not allow a jury to find that the delay occurred under circumstances giving rise to an inference of discrimination. *See id.* at 12–13.

As to the former argument, courts have split on whether a delay in a promotion can constitute an adverse action.[13]  Fitchett's delayed-promotion claim is in one sense weaker than many, because, following his grievance, he was given a fully retroactive promotion, with retroactive pay effective December 25, 2015, *see* JSF ¶¶ 28–29; Def. 56.1 ¶ 17; Pl. 56.1 ¶ 17, and backdated eligibility to the same date for the ensuing promotion to Detective Second Grade, *see* JSF ¶¶ 28–29.  One court in this Circuit has held that where a promotion is initially delayed but later granted retroactively, that delay does not constitute an adverse action.  *See Martires v. Conn. Dep't of Transp.*, 596 F. Supp. 2d 425, 439 (D. Conn. 2009) (because plaintiff had been retroactively reclassified so as receive higher pay rate associated with new post from date of eligibility, she did not experience an adverse action).  But there is also case law recognizing that a plaintiff can satisfy this element of the *prima facie* case if he can demonstrate that the delay caused some "other type[] of injur[y]" while the plaintiff waited for the promotion.  *Guinyard*, 800 F. Supp. at 1089.

Here, apart from pointing to pay- and promotion-eligibility injuries that were rectified by making his promotion retroactive, *see* Pl. Opp'n at 12, Fitchett points to the conduct towards him of Sgt. Briscoe, which he contends caused him stress, led him to resume taking blood-pressure

---

[13] *See MTD Opinion*, 2019 WL 3430726, at *10; *compare Jeffrey v. Montefiore Med. Ctr.*, No. 11 Civ. 6400 (RA), 2013 WL 5434635, at *20 (S.D.N.Y. Sept. 27, 2013) ("[I]t is a failure to promote, not a failure to *quickly* promote that makes an employment action materially adverse." (emphasis in original)), *and Davis v. City Univ. of N.Y.*, No. 94 Civ. 7277 (SHS), 1996 WL 243256, at *9 (S.D.N.Y. May 9, 1996) ("The eventual grant of tenure and a promotion to [plaintiff], even if after a delay, and even if that delay were due to discrimination or retaliation, contradicts her claim that she suffered a materially adverse change."), *with Tierney v. City of New York*, No. 02 Civ. 2403 (RWS), 2007 WL 895133, at *24–25 (S.D.N.Y. 2007) (delay in promotion constituted an actionable adverse employment action under Title VII), *Samuels v. N.Y. State Dep't of Corr. Servs.*, No. 94 Civ. 8645 (SAS), 1997 WL 253209, at *5 (S.D.N.Y. May 14, 1997), *and Guinyard v. City of New York*, 800 F. Supp. 1083, 1088–89 (E.D.N.Y. 1992) ("[A] delay in promotion may itself result in injury . . . .  Even for those who were promoted, an illegal delay in promotion may still result in lost wages, benefits, and other types of injuries.").

medication, and led him to limit interactions with his family. *See* Fitchett Dep. at 63–68. That conduct was the basis of Fitchett's now-dismissed hostile work environment claims. But Fitchett does not explain how this conduct relates to his delayed promotion. Fitchett also notes that he has yet to be promoted to Detective Second Grade, *see* Pl. Opp'n at 12, but, as noted, Fitchett does not connect that to the delay in his attaining the earlier promotion, *see* JSF ¶¶ 28–29.

Fitchett's strongest argument as to this element of the *prima facie* showing is that the delay harmed his reputation in the department. He testified that other officers viewed him as "a hard worker," and said to him, with reference in general to the treatment he experienced, that "something had to be bad for [Fitchett] to go this route." Fitchett Dep. at 66–67. As a theory, Fitchett's claim is plausible. The promotion to Detective Third Grade was non-discretionary, and was to be given "barring [the detective] messing up or not fulfilling duties." Redmond Dep. at 15. A colleague noting Fitchett's long wait for that promotion could have inferred that it bespoke such misfeasance.

But Fitchett has not testified to comments by others indicating his reputation suffered specifically from the delayed promotion. Nor has he adduced other evidence to that effect, such as testimony by others or written communications. At the summary judgment stage, more than the plaintiff's surmise is needed to sustain a claim of reputational injury. *See Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (at the summary judgment stage, the "non-moving party may not rely on conclusory allegations or unsubstantiated speculation"); *see also Fossesigurani v. City of Bridgeport Fire Dep't*, No. 11 Civ. 752 (VLB), 2012 WL 4512772, at *4 (D. Conn. Oct. 1, 2012) (plaintiff's own beliefs about harm to his reputation and one comment from another firefighter asking who "Conniving Ivan" was, suggesting it was plaintiff, were insufficient at the summary judgment stage). Moreover, although damages from reputational

injuries are recoverable under Title VII, *see Lore v. City of Syracuse*, 670 F.3d 127, 154, (2d Cir.

2012), reputational harm alone generally cannot constitute an adverse action, *see Fossesigurani*,

2012 WL 4512772, at *4 (collecting cases).

In any event, even assuming that Fitchett's delayed promotion constituted an adverse

action, he has not adduced evidence that the circumstances surrounding the delay give rise to an

inference of race discrimination.  The facts required to support such an inference "inevitably

vary in different employment discrimination cases." *McGuinness v. Lincoln Hall*, 263 F.3d 49,

53 (2d Cir. 2001); *see Little v. Nat'l Broad. Co.*, 210 F. Supp. 2d 330, 377 (S.D.N.Y. 2002).

Circumstances giving rise to such an inference may include "the employer's criticism of the

plaintiff's performance in ethnically degrading terms; or its invidious comments about others in

the employee's protected group; or the more favorable treatment of employees not in the

protected group; or the sequence of events leading to the [adverse action]." *Littlejohn v. City of

New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502

(2d Cir. 2009)).  Where there is no direct evidence of discrimination, a plaintiff may rely on

indirect or circumstantial evidence.  *See Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir. 1991).

Here, Fitchett has mustered insufficient evidence to raise a triable issue of fact that the

delay of his promotion was due to his race.  He has not adduced any evidence of race-related

comments, oral or written.  In support, he instead claims that three white, male officers—Brian

Robe, David Breyfogle, and Sean Rooney—were promoted to Detective Third Grade in the EPU

within 18 months of beginning investigative work.  Fitchett Dep. at 75–76.

But Fitchett's deposition testimony, on which he relies for this factual proposition, does

not support it.  That testimony arose from questions put to Fitchett about his SAC's allegation

that these three detectives "upon information and belief" had been promoted within 18 months.

*Id.* at 75 (quoting SAC ¶ 90).  Fitchett was asked only whether he knows who the detectives to which the SAC was referring are, not the basis for his claim that they waited only 18 months to be promoted.  *See id.* at 75–76.  Fitchett's deposition testimony is silent on that point.  And Fitchett has not pointed to evidence elsewhere in the record substantiating this allegation.  Accordingly, as defendants note, this claim is conclusory.  Thus, even assuming Fitchett were similarly situated to these three officers in all material respects, *see Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (plaintiff seeking to raise inference of discrimination based on disparate treatment must show he was "similarly situated in all material respects" to comparators), the record does not establish that they were treated differently than he was as to the timing of promotion.

In any event, as defendants note, the record evidence is that delays in promotions to Detective Third Grade are common and span officers of different races.  Defendants note that Inspector Redmond experienced a delay of four months, *see* Redmond Dep. at 15, 93–94, and Planta-Martin, a Hispanic officer, filed a grievance alleging that her promotion to Detective Third Grade had been delayed, *see* Def. 56.1 ¶¶ 13–14; Pl. 56.1 ¶¶ 13–14.  The record does not contain the length of the delay of Planta-Martin's promotion other than Fitchett's testimony that it was "not as long" as Fitchett's.  Fitchett Dep. at 40; Fitchett Decl. ¶ 8.  Planta-Martin's grievance was granted alongside Fitchett's.  *See* Saint-Fort Decl., Ex. D (approving Fitchett and Planta-Martin grievances).  This sparse record, although not inconsistent with the possibility that Fitchett's delay stemmed from racial discrimination, does not affirmatively support that claim.[14]

---

[14] Fitchett notes that Jermaine Whidbee, a Black detective, experienced a delay before promotion of some length.  *See* Fitchett Dep. at 40–41.  But the record lacks evidence regarding this delay, and Fitchett did not bring forward evidence supporting that Whidbee's delay was attributable to his race.  *See id.* at 41.  Whidbee's experience thus does not support a discrimination inference.

Fitchett next argues that the fact that he has not been promoted to Detective Second Grade suggests that the earlier delay in promoting him to Detective Third Grade was due to discrimination. *See* Pl. Opp'n at 14. That does not follow, because the two positions have separate criteria; the promotion to Detective Second Grade is a discretionary position, and, as addressed *infra*, the record lacks evidence that Fitchett's failure yet to attain Detective Second Grade is due to race discrimination.

Finally, Fitchett points to an EEOC report of March 4, 2016 that found, based on evidence from 2007 to 2013, discrimination in the Intelligence Bureau affecting the promotion of Black detectives to Detective Second Grade. *See* Bellovin Decl., Ex. 6 ("EEOC Determination"). But that report concerned a separate process, the discretionary promotion to Detective Second Grade. It faulted the "wholly subjective and secretive process" as resulting in Black detectives receiving "lesser and later opportunities for promotion consistent with their qualifications." *Id.* at 3. The report, however, is silent on promotions to Detective Third Grade, which are not discretionary. It was also based on promotions substantially predating the period of Fitchett's eligibility.

Accordingly, Fitchett has not established a *prima facie* case of racial discrimination with respect to the delay in his promotion to Detective Third Grade.

ii.     Legitimate, Non-Discriminatory Reason

Even assuming that the above evidence made out a *prima facie* case, defendants have offered a legitimate, non-discriminatory reason for the delay: that such delays are common and result from quotidian administrative burdens,  An "employer's explanation of its reasons must be clear and specific in order to afford the employee a full and fair opportunity to demonstrate pretext." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 105 (2d Cir. 2001) (quoting *Meiri*, 759 F.2d at 996–97) (quotation marks omitted).

Defendants have adduced evidence that the delay in Fitchett's promotion is a common problem caused by administrative lag in the NYPD.  Inspector Redmond testified that once an officer is assigned to units that perform investigative work, like the narcotics unit, barring any issues with the officer's performance, the officer will be promoted to Detective Third Grade after 18 months of service.  Redmond Dep. at 15.  However, he testified, although this promotion is non-discretionary, it is not "automatic" in that it does not happen immediately.  *Id.* at 14–15.  He attributed the lag to "paperwork" and explained that when such lags occur, the NYPD can "just do some paperwork and backdate you so you get credited for all that time."  *Id.* at 15; *see also id.* at 88.  When the promotion lags, the officer may file a grievance.  Chief Galati testified without contradiction that grievances of this types of "quite common within the NYPD."  Galati Decl. ¶ 17.  And grievances concerning promotion to Detective Third Grade are "routinely granted."  *Id.* ¶ 18.

To be sure, the portrait of a sluggish bureaucracy ill-equipped to efficiently process the promotions to Detective Third Grade to which officers are entitled is not a flattering one.  One can question the wisdom of a system that, in practice, puts the onus on officers to complain and even file grievances to secure the completion of the administrative work necessary to effectuate the promotions to which they are entitled.  Nonetheless, while unflattering, the explanation that defendants muster—of bureaucratic inefficiency—is supported by the evidence and supplies, on the summary judgment record, a race-neutral justification for the delay that Fitchett experienced.

### iii.    Pretext

For substantially the same reasons that the evidence does not make out a *prima facie* case of racial discrimination in connection with Fitchett's delayed promotion to Detective Third Grade, Fitchett has not adduced "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant[s] were false, and that more

likely than not discrimination was the real reason for the employment action." *Forte v. Liquidnet Holdings, Inc.*, 675 F. App'x 21, 25–26 (2d Cir. 2017) (summary order) (brackets omitted) (quoting *Weinstock*, 224 F.3d at 42); *see also Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014) (admissible evidence must show defendants' decision "more likely than not based in whole or in part on discrimination" (citation omitted)).

Seeking to rebut defendant's race-neutral explanation for the delayed promotion, Fitchett first notes his strong evaluations. He has received consistent and nearly uniform ratings of 4.0 to 4.5 out of 5, *see* Bellovin Decl., Ex. 1 (Fitchett's performance evaluations from 2012 to 2017); Fitchett Dep. at 32–33, and no negative evaluations, *see* Redmond Dep. at 18. But while Fitchett's record is impressive, it is undisputed that the promotion in question is non-discretionary once an officer has performed 18 months of investigative work, and defendants have not claimed as a justification for the delay any shortcoming in Fitchett's performance. Accordingly, Fitchett's strong evaluations are not responsive.

Fitchett repeats his claim that three white officers—Brian Robe, David Breyfogle, and Sean Rooney—were promoted more quickly than he was. Pl. Opp'n at 16. Again, however, Fitchett has not adduced admissible evidence as to how long these detectives waited for promotion after attaining eligibility, and Fitchett's deposition testimony, discussing the SAC's "on information and belief" allegations about the three, is inadmissible as to the length of the delay that the three officers experienced, let alone the circumstances. *See* Fitchett Dep. at 75–76 (quoting SAC ¶ 90).

Accordingly, the Court grants summary judgment to the defense on Fitchett's Title VII and NYSHRL discrimination claims based on the delay of his promotion to Detective Third Grade.

    b. *NYCHRL Claims*

  Defendants also move for summary judgment as to plaintiffs' claims under the NYCHRL

about the delay of that promotion.

  The standard for a *prima facie* case under the NYCHRL is more relaxed than its

counterparts under Title VII and the NYSHRL.[15]  The plaintiff need show only that his employer

treated him "less well, at least in part for a discriminatory reason." *Mihalik*, 715 F.3d at 110 n.8.

To show adverse action, a "plaintiff must simply show that he was treated differently from others

in a way that was more than trivial, insubstantial, or petty." *Gorman v. Covidien, LLC*, 146 F.

Supp. 3d 509, 530 (S.D.N.Y. 2015) (alterations omitted) (citations and quotations omitted).

Finally, as to the requirement that the adverse action occurred under circumstances giving rise to

an inference of discrimination, "the *prima facie* case is satisfied if a member of a protected class

was treated differently than a worker who was not a member of that protected class." *Id.*

(citations and quotations omitted).  Notwithstanding the more lenient standard, summary

judgment for the defense on a claim under the NYCHRL "is appropriate if the record establishes

as a matter of law that discrimination or retaliation played no role in the defendant's actions."

*Montgomery v. N.Y.C. Transit Auth.*, 806 F. App'x 27, 31 (2d Cir. 2020) (summary order).

---

[15] In the following discussion, the Court applies the *McDonnell-Douglas* framework to Fitchett's
NYCHRL claim.  There is intermediate appellate authority questioning whether that framework
governs such claims.  *See Persaud v. Walgreens Co.*, 161 A.D.3d 1019, 1020 (2d Dep't 2018)
("Summary judgment dismissing a claim under the NYCHRL should be granted only if no jury
could find defendant liable under any of the evidentiary routes—*McDonnell Douglas*, mixed
motive, direct evidence, or some combination thereof." (citations and quotations omitted)).
Neither the New York Court of Appeals nor the Second Circuit has resolved that issue.  *See
Hofmann v. Schiavone Contracting Corp.*, 630 F. App'x 36, 39 (2d Cir. 2015) (summary order)
(acknowledging that extent to which *McDonnell-Douglas* applies to NYCHRL claims is
"unclear" after *Bennett*, but declining to resolve the issue).  The Court need not resolve this legal
question here because, under any of these frameworks, Fitchett has not raised a triable issue of
fact that defendants' stated reason for the delay was pretextual.

The Court assumes without deciding that, measured under the NYCHRL's less stringent standard, the delay in Fitchett's promotion was an adverse action.  But, for substantially the same reasons that Fitchett could not establish an inference under Title VII and the NYSHRL that the delay resulted from race discrimination, he cannot do so here.  Fitchett's claim that Robe, Breyfogle, and Rooney were promoted within 18 months is factually unsubstantiated.  And the EEOC Determination concerns a promotion to a different position entailing a discretionary—and hence different—process.  And Fitchett has not adduced evidence tending to refute as pretextual defendants' substantiated race-neutral explanation: that lags in the promotion process are common as a result of administrative inefficiency; that such delays have affected officers of varied races, not merely Black officers; and that promotions often have been granted only after an officer, like Fitchett, has filed a grievance. Galati Decl. ¶¶ 17–18; *see* Redmond Dep. at 15, 88, 93–94; Def. 56.1 ¶¶ 13–14; Pl. 56.1 ¶¶ 13–14; Fitchett Decl. ¶ 8; Saint-Fort Decl., Ex. D. Fitchett has not adduced evidence raising a triable issue of fact on this claim.

Accordingly, the Court grants summary judgment to the defense on Fitchett's NYCHRL discrimination claim as to the delay in his promotion to Detective Third Grade.

### 3.  Failure to Promote to Detective Second Grade[16]

#### a.  Exhaustion

At the threshold, the Court must determine whether Fitchett, to the extent he claims that his not having been promoted to Detective Second Grade results from race discrimination, has exhausted his administrative remedies.  "As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint

---

[16] Defendants' reply urges that Fitchett has abandoned his claims related to this promotion.  *See* Def. Reply at 9.  The Court, however, reads Point III of Fitchett's opposition brief to defend these claims.  *See* Pl. Opp'n at 18–21.

with the EEOC." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003).  In this Circuit, exhaustion is not a jurisdictional prerequisite but an affirmative defense.  *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018).  Accordingly, "the burden of pleading and proving Title VII exhaustion lies with defendants."  *Id.*

Defendants have not met this burden.  They argue that although Fitchett filed a complaint with the EEOC and received a Right to Sue notice, *see* EEOC Compl., the complaint concerned the delay in his promotion to Detective Third Grade, not the NYPD's failure to promote him to Detective Second Grade, and the latter was not "included in or [] 'reasonably related' to the allegations contained in [the] EEOC charge."  *Holtz*, 258 F.3d at 83 (quoting *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)).  Fitchett's complaint indeed focused on the Detective Third Grade promotion and on Sgt. Briscoe's conduct towards him, as Fitchett admits.  *See* Pl. Opp'n at 19.  But the complaint also addressed Fitchett's future promotional opportunities:  "Being marginalized in this manner, my opportunities for promotion have diminished and I have been passed over, as I have been relegated to 'invisible' tasks and assignments."  EEOC Compl. at 3.  Fitchett noted, too, that the "next-level promotion, carries with it a salary increase."  *Id.*  These references, though sparse, were sufficient to articulate Fitchett's concerns that his path to promotion to Detective Second Grade was in the process of being blocked, and hence within the scope of the EEOC complaint.[17]

_____

[17] Defendants fairly note that at the time Fitchett filed his EEOC Complaint, he was not eligible for a promotion to Detective Second Grade because he had not served three years as a Detective Third Grade.  *See* Def. Reply at 7.  Nonetheless, the complaint did articulate Fitchett's fear that defendants were blocking his path to that promotion.  The Court considers defendants' argument *infra*, in considering whether Fitchett can establish, as a part of his *prima facie* case, that he was qualified for the position, an issue to which defendants' observation is germane.

####### b.   *Title VII and NYSHRL Claims*

In connection with his non-promotion to Detective Second Grade, Fitchett brings, under Title VII, a disparate treatment claim against the City for failure to promote; and, under the NYSHRL, claims for disparate treatment, failure to promote, and unlawful discrimination. Because each claim arises out the same conduct—the failure to promote Fitchett to Detective Second Grade, allegedly due to this race—the Court treats these claims as co-extensive.

####### i.   *Prima Facie* Case

Defendants concede that Fitchett is a member of a protected class, and do not appear to contest that the denial of a promotion is an adverse employment action.[18]   However, they dispute whether the evidence permits a finding that he was qualified for the promotion in question or that the lack of the promotion arose under circumstances giving rise to an inference of discrimination.

First, defendants argue that at no point during his tenure in the EPU was Fitchett qualified for a promotion to Detective Second Grade.  It is undisputed that Fitchett was not eligible for that promotion until December 25, 2018, *see* Def. 56.1 ¶ 27; Pl. 56.1 ¶ 27, three years from the retroactive date of his promotion to Detective Third Grade.  By the time Fitchett filed the SAC on February 8, 2019, he was eligible for a promotion to Detective Second Grade—as defendants

---

[18] A failure to promote is an adverse employment event.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).  Although not putting this element in dispute, defendants note case law that a plaintiff must demonstrate either that he applied for a position (formally or through informal procedures endorsed by the employer) or lacked knowledge of it before it was filled. *See* Def. Mem. at 16.  Courts in this District have recognized the unique nature of the promotion to Detective Second Grade, a discretionary promotion for which detectives do not apply in the traditional sense.  *See Stewart v. City of New York*, No. 11 Civ. 6935 (CM), 2012 WL 2849779, at *6 (S.D.N.Y. July 10, 2012) (recognizing that factual record would be required to determine whether the plaintiff "needed to do—or could have done—anything to 'apply' for a promotion to Detective 2nd Grade").  The factual record appears unclear as to how Fitchett applied for this promotion, but the Court assumes without deciding that Fitchett has satisfied this element of the *prima facie* case, insofar as defendants do not explicitly dispute that he has done so.

concede.  *See* Def. Mem. at 16–17.  But, defendants note, Fitchett was transferred to the DPU on

December 20, 2018, five days before he was eligible for that promotion.  JSF ¶ 30.

Defendants' precise argument based on Fitchett's transfer within units of the Intelligence

Bureau is elusive.  It is possible that defendants mean to suggest that Fitchett ceased to be

eligible for promotion for some time after the transfer, but they do not present evidence to that

effect.  It is also possible that defendants mean to suggest that individual defendants, such as

Inspector Redmond, who previously were responsible for Fitchett's promotions, lost authority

over his promotions after Fitchett's transfer.  Defendants, however, do not clearly articulate that

point, which in any event, does not go to Fitchett's qualification for promotion.  Fitchett, for his

part, does not address the relevance, if any, of his transfer to the DPU.

The Court holds for Fitchett on this aspect of defendants' challenge.  In the end, both the

EPU and the DPU are units within the Intelligence Bureau.  And promotion policies as to the

position of Detective Second Grade are, generally, the same in both units.  *See* JSF ¶¶ 17–18;

Def. 56.1 ¶ 5; Pl. 56.1 ¶ 5.  As of the filing of this motion, Fitchett has still not been promoted to

Detective Second Grade.  Because the defense has not coherently explained why Fitchett's

transfer precludes his present claim, the Court finds that Fitchett satisfied the second element of

his *prima facie* case.

Defendants next argue that Fitchett has not come forward with evidence sufficient to

establish that the NYPD's failure, to date, to promote him to Detective Second Grade occurred

under circumstances giving rise to an inference of discrimination.  On this point, defendants are

correct.

Fitchett emphasizes that, under Inspector Redmond's command, eight non-Black

detectives—Donald Catanzaro, Sean Rooney, Karl Rugg, Jorge Bravo, Marissa Cabo, Leo

Pereyra, Nelson Vergara, and Salwa Merced-Jwayyed—have been promoted to Detective

Second Grade.  *See* Redmond Dep. at 55–59, 66–68, 71; *see also* Saint-Fort Decl., Exs. I, J, T,

U, V, W, X.  During that command, he notes, six Black detectives other than himself—Senice

Black, Robert Carter, Ashley Ashton, Jamel Ashley, Robert Carter, and Teron Figueroa—have

not been promoted.  *See* Pl. 56.1 ¶ 24; Redmond Dep. at 52–55, 58, 61–62, 72.

That limited data, however, does not give rise to an inference of discrimination.  As

developed in more detail in the analysis of Fitchett's disparate impact claims, *see infra* pp. 39–45,

this data is selectively presented and devoid of context.[19]  Although not referenced by Fitchett,

under Inspector Redmond's command, four Black detectives—Tanasha Dalton, Gilbert Pierre

Louis, Tiffany Wright, and Eustace Hunt—were promoted to Detective Second Grade.  *See*

Saint-Fort Decl., Exs. G, H, M; Galati Decl. ¶ 13(g); Redmond Dep. at 67.  And Fitchett does not

provide comparable data on non-Black officers who were not promoted.  That some white

detectives were promoted and some Black detectives were not does not, without more, support

the inference that the non-promotion of any one Black detective resulted from discrimination.

Fitchett's failure to properly (1) develop the pools of qualified Black and non-Black officers over

a specified period and (2) develop average promotion rates for each group doom his claim based

on such scant promotion data.  *See, e.g.*, *Pollis v. New Sch. for Soc. Rsch.*, 132 F.3d 115, 123

(2d Cir. 1997) (statistical evidence that was "too scant and too flawed" could not support

inference of discrimination); *Schupbach v. Shinseki*, 905 F. Supp. 2d 422, 433 (E.D.N.Y. 2012)

---

[19] Further, a sample size this small cannot ordinarily support an inference of discrimination on its own.  *See, e.g.*, *McCarthy v. N.Y. Tech. College*, 202 F.3d 161, 165 (2d Cir. 2000) (sample of two clearly insufficient to sustain inference of discrimination); *Haskell v. Kaman Corp.*, 743 F.2d 113, 121 (2d Cir. 1984) (10 terminations over 11-year period insufficient sample size to support inference of discrimination); *Vuona v. Merrill Lynch & Co.*, 919 F. Supp. 2d 359, 374 (S.D.N.Y. 2013) (sample size of 14 "counsels against heavily weighting statistical evidence").

("Without information on all of the applicants, the [promotion] statistics do not provide any basis for an inference of discrimination."); *Fisher v. Vassar Coll.*, 66 F.3d 379, 402 (2d Cir. 1995) (statistics "built on gerrymandered data and a series of statistical fallacies" could not support inference of discrimination); *see also Vuona*, 919 F. Supp. 2d at 374 (statistical evidence based on small population could not support discriminatory inference where "the numbers [were] readily capable of being viewed as entirely non-indicative of discrimination").

Moreover, in contrast to the circumstance in which candidates vie to fill a specific vacancy, there are not a finite number of positions of Detectives Second Grade.  Thus, the promotion of non-Black detectives is not a promotion in lieu of Fitchett.  For an inference of discrimination to arise based on the contrast with others, it would be incumbent on Fitchett to show that he was similarly situated to these officers "in all material respects," *Graham*, 230 F.3d at 39, so as to support that the discretion exercised by those making the promotion decisions was skewed to disfavor him on account of race.  Fitchett, however, has not developed any record as to the performance or other relevant qualifications of the comparators to whom he points.

Accordingly, Fitchett has not met his burden of establishing a *prima facie* case of disparate treatment, failure to promote, or unlawful discrimination in the NYPD's failure to promote him to Detective Second Grade.

ii.     Legitimate, Nondiscriminatory Reason

Even if Fitchett had established his *prima facie* case, defendants have articulated a legitimate, non-discriminatory reason for the failure, to date, of the NYPD to promote him to Detective Second Grade.  Specifically, defendants have adduced evidence that, after Fitchett complained to Inspector Redmond about Sgt. Briscoe, he was transferred to another team, *see* Redmond Dep. at 32–33; Fitchett Dep. at 80–81, but promptly struggled in this role.  His lapses included, as noted above, carrying out the portion of his job involving driving ahead of the

mayoral motorcade.  Consistent with contemporaneous emails commenting on this lapse, Inspector Redmond testified, for example, that Fitchett, who was assigned the position of driving the lead vehicle that drives five minutes ahead of the mayor's vehicle, struggled to stay ahead of the rest of the detail and once drove the wrong way down a one-way street.  *See* Redmond Dep. at 37–38.  Deficient performance can constitute a legitimate, nondiscriminatory reason for a failure to promote.  Here, the defendants have identified a performance lapse on Fitchett's part in his new role.  Fitchett does not dispute that these incidents occurred.  On the contrary, he testified as to them.  Fitchett Dep. at 45–47.  Defendants have thus come forward with a legitimate nondiscriminatory reason for Fitchett's non-promotion, after his transfer, to Detective Second Grade.  *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 92 (2d Cir. 1996); *see also Judge v. N.Y. City Police Dep't*, No. 10 Civ. 4236 (RMB), 2012 WL 98509, at *5 (S.D.N.Y. Jan. 12, 2012) (unsatisfactory performance can constitute legitimate, nondiscriminatory reason for failure to promote) (collecting cases).

iii. Pretext

With defendants having identified a legitimate, nondiscriminatory reason for NYPD's non-promotion of Fitchett to Detective Second Grade, the burden shifts back to Fitchett to raise a triable issue of fact that defendants' justification is a pretext for discrimination.

For much the same reasons that the evidence does not give rise to an inference of racial discrimination, it does not support that defendants' performance-based explanation for Fitchett's failure to be promoted was a pretext for racial discrimination.  As noted above and as developed further *infra*, the data on which Fitchett relies—which selectively presents data about the race of persons promoted and not promoted and lacks context enabling a comparison between Fitchett and his supposed comparators—is inadequate to give rise to an inference of, let alone to

37

establish, racial bias.  As a result, there is no basis to infer that defendants' stated reason why Fitchett has yet to be promoted is pretextual, with the true one being discrimination.

In claiming pretext, Fitchett notes he has received positive performance ratings of 4.0 to 4.5 out of 5, *see* Bellovin Decl., Ex. 1 (Fitchett's performance evaluations from 2012-2017), and that he has not been the subject of disciplinary charges, *see* Fitchett Dep. at 32–33, and disputes that he was at fault for the incident in which he was unable to stay in front of the mayor's detail, *see id.* at 45–47.  But whatever the true facts as to the mayor's-detail episode, the decisive issue is "what *motivated* the employer."  *McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983) (emphasis in *Aikens*) (quotations omitted)).  Fitchett does not identify evidence calling into question that his supervisors genuinely concluded he had been at fault in that episode.  And he does not address the separate incident in which he is alleged to have erred in his new role, in which he allegedly drove the wrong way down a one-way street.

In finding no evidence of pretext, the Court does not rule out that a more searching review of potential comparators could have supported Fitchett's theory.  Conceivably, for example, a deeper look at the records of non-Black detectives promoted to Detective Second Grade would have revealed that comparable missteps on their parts had been overlooked.  *See, e.g.*, *LeBlanc v. United Parcel Serv.*, No. 11 Civ. 6983 (KPF), 2014 WL 1407706, at *15 (S.D.N.Y. Apr. 11, 2014) ("A plaintiff may satisfy his or her burden at the pretext stage by showing that similarly situated employees outside the protected class received more favorable treatment than the plaintiff did." (quotations and citation omitted)).  But the record does not supply evidence suggesting that the NYPD disfavored Fitchett relative to non-Black comparators.

Accordingly, the Court grants summary judgment to the defense on Fitchett's Title VII and NYSHRL discrimination claims based on his delayed promotion to Detective Second Grade. This ruling, of course, is without prejudice to Fitchett's right to challenge decisions not to promote him that postdate the period covered by this lawsuit.

c.        <em>NYCHRL Claims</em>

Given the less demanding standards of the NYCHRL, the Court accepts *arguendo* that Fitchett has established that—insofar as he was not promoted to Detective Second Grade whereas various non-Black detectives were—he has experienced differential treatment "in a way that was more than trivial, insubstantial, or petty." *Gorman*, 146 F. Supp. 3d at 530. However, for all the reasons reviewed above in connection with his Title VII and the NYSHRL claims, Fitchett, following discovery, has failed to establish that racial discrimination played any part in these different outcomes. The record does not supply a non-speculative basis for that inference. And Fitchett does not adduce evidence that non-Black detectives to whom he compares himself were similarly situated comparators. Nor has Fitchett rebutted as pretextual the evidence relating to his performance in his new capacity that defendants cited as a basis for exercising discretion to not yet appoint Fitchett.

Accordingly, the Court grants summary judgment to the defense on Fitchett's NYCHRL discrimination claims based on his not yet having been promoted to Detective Second Grade. This ruling, too, is without prejudice to Fitchett's right to challenge decisions not to promote him that postdate the period covered by this lawsuit.

### C.    Disparate Impact Claims

#### 1.    Title VII and NYSHRL Claims

In addition to prohibiting intentional discrimination, Title VII and the NYSHRL protect employees from policies that are "fair in form, but discriminatory in operation." *Mandala v.*

*NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020) (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)).  "Pursuing a disparate impact claim is often a complicated endeavor."  *Id.*  "Disparate impact claims follow a three-part analysis involving shifting evidentiary burdens."  *Gulino v. N.Y. St. Educ. Dep't*, 460 F.3d 361, 382 (2d Cir. 2006).

The plaintiff bears the initial burden of making a *prima facie* case of disparate impact.  *Id.*; *see also* 42 U.S.C. § 2000e–2(k).  To establish a *prima facie* case[20] for disparate impact under Title VII and the NYSHRL, "a plaintiff [must] (1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two."  *Chin*, 685 F.3d at 151 (quotation marks and citations omitted).  "An employer can rebut a *prima facie* showing of disparate impact by demonstrating that the employment practice is job-related, and the plaintiff, in turn, can rebut that showing by demonstrating that there is a less discriminatory alternative to the challenged practice."  *United States v. Brennan*, 650 F.3d 65, 90 (2d Cir. 2011).

Here, defendants argue that Fitchett's disparate impact claim fails at the first step of the *prima facie* case, namely that he has failed to identify a specific employment policy or practice.  *See* Def. Mem. at 21.  Fitchett, drawing on the EEOC's earlier critique of the NYPD's approach to promotions, counters that the policy at issue is a "secretive process that lacks standards and allows the all-white supervisors to refuse to promote deserving African-American detectives."  SAC ¶ 110; *see also* EEOC Determination at 3 ("[NYPD's] wholly subjective and secret process [for promotions] operates without any structured guidelines.").

---

[20] Class action plaintiffs may establish a *prima facie* case by pursuing a "pattern-or-practice" theory, under which the plaintiffs need only establish the existence of a discriminatory policy. *See Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 149 (2d Cir. 2012).  That method of proof is not available to individual, non-class plaintiffs.  *Id.*

It is a fair question whether Fitchett's challenge is actionable as a challenge to policy. More precisely, he appears to argue that the NYPD's "secretive process," although facially neutral, has a disparate impact on Black officers. *See Attard v. City of New York*, 451 F. App'x 21, 24 (2d Cir. 2011) (summary order) (a "preference" of disciplinary charges against older teachers was "not a neutral practice, but rather intentional discrimination"); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 572 (2d Cir. 2000) (plaintiff failed to make a *prima facie* case where she alleged that the disparate effects of the policy on Hispanic employees were "due to discriminatory enforcement of the no-assault policy, not to the disparate effect of the policy as neutrally applied"), *superseded by statute on other grounds by* N.Y.C. Admin. Code § 8-130. "Such an allegation sounds not in disparate impact, but in disparate treatment." *De La Fuente v. Sherry Netherland, Inc.*, No. 17 Civ. 4759 (PAE), 2018 WL 1597649, at *6 (S.D.N.Y. Mar. 27, 2018). And a plaintiff "generally cannot attack an overall decision making process in the disparate impact context, but must instead identify the particular element or practice within the process that causes an adverse impact." *Malave v. Potter*, 320 F.3d 321, 327 (2d Cir. 2003) (quotations and citation omitted).

Nonetheless, even assuming *arguendo* that Fitchett had satisfied the first prong of his *prima facie* case, on the sparse—and entirely statistical—evidence he has mustered, Fitchett has not raised a triable issue of fact either that there is a disparity between Black candidates and their valid comparators for promotion to Detective Second Grade, or that, whatever policy the NYPD's approach may embed, it yields disparities among comparable candidates based on race. It is of course possible that is so. But to establish such a claim requires more statistical rigor than has been shown here.

"[S]tatistical proof almost always occupies center stage in a *prima facie* showing of a disparate impact claim." *Adorno v. Port Auth. of N.Y. & N.J.*, 258 F.R.D. 217, 233 (S.D.N.Y. 2009); *see also Gulino*, 460 F.3d at 382 ("The plaintiff must then produce statistical evidence showing that the challenged practice 'causes a disparate impact on the basis of race, color, religion, sex, or national origin.'" (quoting 42 U.S.C. § 2000e–2(k)(1)(A)(i))).  Although there is no "one test," courts "generally consider [a significant disparity of two standard deviations] sufficient to warrant an inference of discrimination." *Malave*, 320 F.3d at 327.  If the plaintiff cannot show a "gross statistical disparity," a plaintiff can establish a *prima facie* case by showing "statistically significant adverse impact coupled with other evidence of discrimination." *Guinyard*, 800 F. Supp. at 1088 (quoting *Waisome v. Port Auth. of New York and New Jersey*, 948 F.2d 1370, 1375 (2d Cir. 1991)).  However, in cases involving small sample sizes, statistical significance is often unreliable, and therefore "other indicia raising an inference of discrimination must be examined." *Waisome*, 948 F.2d at 1379.

Here, Fitchett has not come forward with a statistical analysis of any kind.  He has not, for example, come forward with an expert report analyzing NYPD promotions data with methodological rigor.  Instead, Fitchett draws top-line lay statistical conclusions that are flawed on their face.  He notes that, based on FINEST messages, there were 12 promotions[21] of Black officers in the EPU between January 1, 2014, and December 20, 2018.  Most (seven) of these, he notes, were non-discretionary promotions to Detective Third Grade; and four Black detectives— Tanasha Dalton, Gilbert Pierre Louis, Tiffany Wright, and Eustace Hunt—were promoted to

---

[21] In fact, as noted, the FINEST messages in the record indicate that there were actually 13 Black officers promoted in this time period.  *See supra* note 4; *see also* Saint-Fort Decl., Ex. H (Pierre Louis was promoted to Detective Second Grade on April 22, 2015); Redmond Dep. at 67 (Pierre Louis identifies as Black).

Detective Second Grade between January 1, 2014, and December 20, 2018.  *See* Pl. Opp'n at 22; *see supra* pp. 8–11.[22]  Although Fitchett finds this data suggestive, in fact, it does not permit, other than by speculation, the conclusion that between January 1, 2014, and December 20, 2018, there was a statistically significant disparity, on racial lines, in promotions to Detective Second Grade within the EPU.  Analyzed by percentages, this data does not suggest the presence of racial discrimination.  Black detectives made up approximately 27% of the EPU in this period (26 out of 96).  *See* Def. 56.1 ¶ 23; Pl. 56.1 ¶ 23.  And, based on the summary judgment record, approximately 31% (four out of 13) of the promotions to Detective Second Grade during this period were of Black detectives.[23]  Potentially relevant, too, during this same period, two Black EPU detectives were promoted to Detective First Grade.  *See* Saint-Fort Decl., Exs. S, U.  In contrast, according to the FINEST messages in the record, only one other officer, Daniel Rivera, whose race is unknown, was promoted while in the EPU to Detective First Grade during this period—on October 26, 2016.  *See id.*, Ex. O.

Fitchett also notes that six Black EPU detectives—Senice Black, Robert Carter, Ashley Ashton, Jamel Ashley, Robert Carter, and Teron Figueroa—have been eligible for a promotion to Detective Second Grade since August 2018 or October 2018 (for Senice Black) but that, as of October 11, 2019, none had been promoted.  *See* Pl. Opp'n at 23 (citing Def. 56.1 ¶ 24; Redmond Dep. at 52–55, 58, 61–62, 72).  By contrast, Fitchett notes, eight non-Black

---

[22] The record is unclear whether the FINEST messages submitted by defendants reflect all promotions made in this period.  *See supra* note 7 (noting that Galati Declaration indicates that Eustace Hunt was promoted to Detective Second Grade on January 28, 2016, but that no FINEST message was submitted for that date).  Fitchett does not contend that there are additional promotions of Black or non-Black detectives not reflected in the record.

[23] Construing all reasonable inferences in favor of Fitchett as the non-moving party, the Court assumes that any promotion of an EPU officer whose race is unknown or disputed is a non-Black officer.

detectives—Donald Catanzaro, Sean Rooney, Karl Rugg, Jorge Bravo, Marissa Cabo, Leo Pereyra, Nelson Vergara, and Salwa Merced-Jwayyed—had been promoted to Detective Second Grade as of October 11, 2019.  *See* Redmond Dep. at 55–59, 66–68, 71; *see also* Saint-Fort Decl., Exs. I, J, T, U, V, W, X.  But Fitchett does not put the latter set of promotions in usable context.  He does not explain, for example, when the candidates who were promoted became eligible for promotion.  The contrast he draws therefore may be explained, among other possible neutral factors, by the length of time that the candidates had waited after becoming eligible for promotion.  Simply put, more statistical rigor is needed for a disparate impact claim to reach a jury, lest correlation be mistaken for causation.  *See Mandala*, 975 F.3d at 209 (statistics "must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity" (quoting *Chin*, 685 F.3d at 151)).

In support of his disparate impact theory, Fitchett further claims that Black EPU officers were forced to wait longer for their non-discretionary promotion to Detective Third Grade than were their non-Black counterparts.  *See* Pl. Opp'n at 22.  But Fitchett does not point to evidence establishing this.  He points only to the period during which he waited.  He has not adduced evidence that, on average, Black EPU detectives during the same period waited longer than others to be promoted to Detective Third Grade.

Finally, Fitchett notes the finding by the EEOC in March 2016 that Black detectives in the Intelligence Bureau "in general, received lesser and later opportunities for promotion consistent with their qualifications."  EEOC Determination at 3.  That finding supplied a solid basis on which to initiate this lawsuit, but, at the summary judgment stage, it is not a substitute for evidence relating to the period in which Fitchett's claims arise.  The EEOC report was based

on decisions regarding promotions to Detective Second Grade between 2007 and 2013, years

before Fitchett became eligible for such a promotion on December 25, 2018.

It is, of course, possible that evidence, thoroughly adduced and reliably analyzed, could

have established liability on a disparate impact theory.  The evidence adduced here, however,

falls well short.  The Court accordingly finds that Fitchett has not adduced evidence sufficient to

make out a *prima facie* case for such a claim.

### 2.    NYCHRL Claim

A plaintiff bringing a claim for disparate impact under the NYCHRL must establish "that

a policy or practice of a covered entity or a group of policies or practices of a covered entity

results in a disparate impact to the detriment of any group protected by the provisions of [the

NYCHRL]."  N.Y.C. Admin. Code, § 8-107(17).  Like disparate treatment claims, disparate

impact claims under the NYCHRL are construed more liberally than their counterparts under the

Title VII and the NYSHRL.  *See Mihalik*, 715 F.3d at 109.

Even under this more permissive standard, Fitchett's NYCHRL disparate impact claim

fails.  As explained, Fitchett has not identified a facially neutral policy that, with the data

subjected even to minimal rigor, has yielded racially disparate promotion outcomes for Black

and non-Black detectives in the EPU.  *See, e.g.*, *Assistant Deputy Wardens/Deputy Wardens*

*Ass'n v. City of New York*, No. 14 Civ. 4308 (FB) (JO), 2019 WL 4015119, at *2 (E.D.N.Y. Aug.

26, 2019) (dismissing disparate impact claim under NYCHRL for substantially the same reasons

as under Title VII and the NYSHRL, notwithstanding NYCHRL's more liberal construction); *De*

*La Fuente*, 2018 WL 1597649, at *6 n.7 (disparate impact claim under NYCHRL would fail for

substantially the same reasons if it had been properly pled).

The Court, accordingly, grants summary judgment to the defense on these claims, too.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment. The Clerk of Court is respectfully directed to terminate the motion pending at docket 71 and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 15, 2021
         New York, New York